***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction over the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of the parties.
3. On October 21, 2008, an employee/employer relationship existed between Plaintiff and Defendant-Employer.
4. On October 21, 2008, the Employer, UPS Freight, was insured by Liberty Mutual Insurance Company with Gallagher Bassett as the Third-Party Administrator.
5. On October 21, 2008, Plaintiff suffered a compensable injury arising out of and in the course of her employment with Defendant-Employer. At the time of her injury, Plaintiff's average weekly wage was $836.30, yielding a compensation rate of $557.56.
6. Following the date of injury on October 21, 2008, the Plaintiff continued to work for Defendant-Employer until November 12, 2008 when she was taken out of work by Dr. Doty.
7. Plaintiff's claim was accepted as compensable, and Plaintiff has been paid temporary total disability benefits at the rate of $557.56 per week from November 12, 2008 to date and continuing.
 *********** EXHIBITS
The following exhibits were admitted into evidence: *Page 3 
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Indexed Set of Exhibits
 (c) Stipulated Exhibit 3: Medical Records
 (d) Plaintiff's Exhibit 1: Job Search Log
 (e) Defendants' Exhibit 1: Bill of Lading
 (f) Defendants' Exhibit 2: MSDS Sheets for Sodium Chloride
 *********** ISSUES (a) Whether Defendants' Form 24 Application should be approved?
 (b) Whether Plaintiff is entitled to further evaluation by a toxicologist or allergist?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 52 year old high school graduate with two years of college training. On October 21, 2008, Plaintiff had been employed as a long-haul truck driver with Defendant-Employer since June 26, 2007.
2. On October 21, 2008, Plaintiff suffered a compensable work injury when she was inside the Morton Salt Company plant in Silver Springs, New York waiting for her truck to be loaded with industrial salt. Approximately 30 minutes after Plaintiff left the facility she broke out in hives and had difficulty breathing. Plaintiff drove to Unity Hospital in Rochester, New York, where she received a diagnosis of mild allergic reaction, and instructions to follow up with her primary care physician upon her return to North Carolina. *Page 4 
3. On November 5, 2008, Plaintiff presented to Dr. Fidelis U. Edosomwan, her primary care physician, with complaints of itching and sinus problems. Plaintiff underwent a pulmonary function test, which revealed normal spirometry. Dr. Edosomwan diagnosed Plaintiff with iodine poisoning and took her out of work.
4. On November 12, 2008, Plaintiff presented to Dr. John Douglas Doty, II, a pulmonologist. Plaintiff reported to Dr. Doty that shortly after being in the Morton Salt Plant, she developed wheezing and difficulty breathing. Dr. Doty administered pulmonary function tests, which revealed mild abnormalities, noted that Plaintiff had a 20-year history of mild asthma, and instructed Plaintiff to refrain from driving her truck.
5. Plaintiff did not return to work after November 12, 2008. Defendants accepted the compensability of Plaintiff's workers' compensation claim via a Form 60. Defendants paid temporary total disability compensation to Plaintiff from November 12, 2008 through the date of entry of the Deputy Commissioner Opinion and Award allowing termination of benefits on February 5, 2010.
6. On December 15, 2008, Plaintiff returned to Dr. Doty and reported that she felt fatigued during the daytime. Dr. Doty ordered repeat pulmonary function tests, which revealed normal results. Dr. Doty noted that Plaintiff might be suffering from sleep apnea, and recommended that she undergo a sleep study.
7. On January 19, 2009, Plaintiff returned to Dr. Doty and complained of generalized malaise and fatigue, but denied any coughing or wheezing. Dr. Doty diagnosed Plaintiff with mild obstructive sleep apnea based upon the results of the recently performed sleep study. Dr. Doty ordered additional testing to further assess Plaintiff's sleep apnea condition. Dr. Doty noted that from the standpoint of the effects of Plaintiff's occupational exposure, she could *Page 5 
return to work without restrictions, but instructed her that she should refrain from driving her truck until she underwent the additional testing he ordered regarding her sleep apnea condition. On January 21, 2009, Plaintiff underwent the additional testing ordered by Dr. Doty, which revealed mild obstructive sleep apnea.
8. On January 27, 2009, Plaintiff presented to Dr. David Lefkowitz, III, an allergist. Dr. Lefkowitz concluded that Plaintiff's physical examination was normal except for slightly pale and boggy nasal mucosa with slight swelling of her inferior turbinates bilaterally, and that she did not demonstrate any chronic or permanent problems related to a salt exposure. Dr. Lefkowitz ordered allergy testing to determine if Plaintiff had any underlying allergies, the results of which were negative.
9. On February 20, 2009, Plaintiff returned to Dr. Doty, who noted that she underwent several pulmonary function tests, none of which demonstrated an airflow obstruction. At Dr. Doty's deposition, he testified that while Plaintiff may have had an initial reaction as a result of a salt exposure, this initial reaction was temporary and did not produce any permanent worsening of her asthma. Dr. Doty was also of the opinion that because Plaintiff suffers from mild sleep apnea, she should be cleared by a physician specializing in sleep disorders prior to driving a truck. Dr. Doty further opined that Plaintiff's October 21, 2008 work injury did not cause, contribute to, or aggravate her mild sleep apnea. Dr. Robert Marion Lombard, Jr., the sleep specialist to whom Dr. Doty referred Plaintiff, concurred with Dr. Doty's opinion that Plaintiff's mild sleep apnea condition is not causally related to her October 21, 2008 work injury.
10. On May 20, 2009, Plaintiff presented to Dr. Robert Patel Quinn, an otolaryngologist. After examining Plaintiff, Dr. Quinn noted swelling of the salivary glands and diagnosed Plaintiff with edema of the pharynx, chronic sinusitis, and angioedema. On June 22, *Page 6 
2009, Plaintiff returned to Dr. Quinn. He reviewed the results of additional allergy testing performed on Plaintiff, which did not identify any allergies. Dr. Quinn advised Plaintiff to continue treatment with Dr. Doty for ongoing management of her asthmatic condition, and that she could return to work without any restrictions. At Dr. Quinn's deposition, he opined that any exposure to salt that Plaintiff may have had on October 21, 2008 did not cause or aggravate her current medical conditions.
11. Following Plaintiff's appeal to the Full Commission, she submitted additional medical records from Dr. Steven Joseph McEldowney, an allergist from whom she sought treatment on October 15, 2009 and April 21, 2010. These records, as well as the records identified by Defendants in their Motion for Reconsideration, are admitted into evidence.
12. According to Plaintiff, Dr. McEldowney felt that she should undergo oral challenge allergy testing at Duke University Medical Center to assist in determining the cause of her recurrent anaphylaxis and shortness of breath. Plaintiff contended that Dr. McEldowney, as well as the physician(s) at Duke that she had recently seen, indicated that she would need to undergo this oral challenge allergy testing in a hospital setting "due to her history of severe reactions and complex history."
13. The Full Commission, with one Commissioner dissenting, reopened the record to receive additional evidence, and to authorize the oral challenge allergy testing at Duke University Medical Center that Plaintiff requested. Plaintiff has not been able to obtain oral challenge testing and it does not appear from the evidence that such testing is available to Plaintiff or recommended. Dr. Dr. McEldowney does not perform this procedure in his practice and Dr. Metz has left the Duke Allergy and Airway Center. *Page 7 
14. Plaintiff contends that she is unable to return to work due to taking Atarax, a prescription antihistamine prescribed by Dr. Edosomwan, her family doctor. Plaintiff testified that the Atarax makes her drowsy. Plaintiff further asserts that after being released to return to work for her occupational exposure by Dr. Doty on January 19, 2009, her DOT recertification to drive a truck was denied because she was taking Atarax. With regard to this issue, Dr. Doty testified that while Plaintiff may have initially required an antihistamine due to her occupational exposure, any continuing use of an antihistamine by Plaintiff is unrelated to her occupational exposure. Dr. Edosomwan did not offer testimony in this matter.
15. Based upon the greater weight of the medical evidence of record, the Full Commission finds that (1) Plaintiff's sleep apnea condition was not caused or aggravated by her October 21, 2008 occupational exposure; (2) as of January 19, 2009, Plaintiff's asthmatic condition was not caused or aggravated by her October 21, 2008 occupational exposure; (3) to the extent Plaintiff had an initial reaction to salt due to the October 21, 2008 occupational exposure, it had resolved as of January 19, 2009; (4) to the extent Plaintiff has any ongoing medical conditions or disability after January 19, 2009, they are causally related to her asthmatic and sleep apnea conditions, not an occupational exposure on October 21, 2008; and (5) Plaintiff does not require further testing or treatment by physicians for a condition related to her October 21, 2008 occupational exposure.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The greater weight of the medical evidence of record establishes that as of January 19, 2009, Plaintiff was no longer disabled as a result of her October 21, 2008 *Page 8 
occupational exposure. Accordingly, Defendants are entitled to terminate Plaintiff's temporary total disability compensation. N.C. Gen. Stat. § 97-18.1.
2. Subject to approval by the Commission, Defendants are entitled to a credit for temporary total disability compensation received by Plaintiff after she was no longer disabled due to her occupational exposure. N.C. Gen. Stat. § 97-42.
3. Defendants have rebutted any presumption that Plaintiff is entitled to future medical treatment related to the October 21, 2008 occupational exposure by producing evidence in the form of the deposition testimony of Drs. Lombard, Quinn, Doty and Lefkowitz, which establish that Plaintiff's current medical condition is not causally related to the October 21, 2008 exposure.Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendants' application to terminate temporary total disability compensation payments to Plaintiff is granted.
2. A credit for temporary total disability compensation received by Plaintiff after January 19, 2009 is approved pursuant to N.C. Gen. Stat. § 97-42 to be paid to Defendants from any future compensation owed to Plaintiff.
3. Each side shall pay its own costs.
This the ___ day of April 2011.
 S/___________________ *Page 9 
BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1